and their families. Case number 23-30529, and we'll hear from Mr. Rubin. How many 35-year-old bankruptcy cases do you get involved in? I am old enough that there are a few, but not many, Your Honor. Your Honor, there are three big issues in this case. First is the scope of the automatic stay on undisclosed property, a stay that's never been annulled. Second, it's the Ritson Travelers issue, which is, when does finality attached to a judgment sufficient to trigger res judicata if a final judgment is not appealed? And that applies to the June ruling here. And third, whether any bankruptcy court or district court order on the automatic stay short of an annulment, and that's the Cueva Sykes case, can ever resurrect or bring back to life a state suit filed in violation of the stay. Now, there's some undisputed facts here, Your Honor, that demonstrate the era of the district court's ruling below. It's undisputed that McConathy and his wife never disclosed the Kansas mineral interests in 1991, December 31st. It's undisputed that the stay remained in effect as to all undisclosed interest under 362C1. It's undisputed that when the Kansas lawsuit was filed in 2015, the automatic stay was in effect. And it's undisputed that there's never been an order of annulment. The order below was termination, but never annulment. So let me turn to Ritson a minute, because Ritson and Travelers are part of the same issue. Travelers, and the U.S. Supreme Court said, when you have a final judgment that's not a timely appeal, that becomes res judicata as to all issues that could be or were asserted. So Ritson then answers, what's a final judgment? And Ritson's a 20-20 decision, as this Court knows, a unanimous decision. Well, this is where I start to have a problem, because is it not the case that courts often deny interim relief from the stay, and the orders are not appealed? Someone has asked for either a stay or adequate protection, order is not appealed, and then six months later, the debtor says, oh, we have someone who's going to buy the property. Six months later, nothing happens. And then the Court changes its mind. Isn't the automatic stay a flexible type of order in that regard? Your Honor, I think that argument could have been made pre-Ritson. I don't think it could be made post-Ritson, because let me talk about the facts of Ritson and why they're exactly the same here. In Ritson, there was an order to modify the stay so the parties could continue a state court suit. That was the facts in Ritson. That's precisely the facts here, to modify the stay so they could continue a state court suit. Ritson said that order was final, the order to modify that was denied, and that's a final order. Now, Ritson also said, look, if it had said, and they left open the question, if it had said without prejudice, denied without prejudice, you could come back and do what Judge Jones you said could be done. But they don't say without prejudice. This order simply denied it, as in Ritson. It's exactly directly on point. And so Ritson did leave open, Your Honor, exactly the issue you want, which is if you want to come back and reconsider, you have to say without prejudice. But Ritson is very clear that if it doesn't say without prejudice, it is, in fact, a final order. So Ritson says that's a final order, not timely appealed, Travelers then says it's res judicata. Now the other side, both Foundation and Blackstone, don't disagree that res judicata applies. They simply say, you're looking at the wrong judgment. Don't look at the June judgment, look at the May judgment. That can't be right. Now, by the way, I had a chart handed out to the court of all the opinions because I know it gets confusing. There is a footnote error. I forgot to footnote the other order there. The October order, you see there's a footnote. You need to add 9435 and 9442. There's another order there that I dropped out of the brief. It's 9435 and 9442. That's on the October order. So that will get you to the right orders. I apologize for having left out. October 21 or 22? No, the October 22 order. I'm sorry, Your Honor. October 22. They say, look at the May 22 order. Well, that can't be a final order. Now, why is that? Well, there was a lot of things going on in that May order, but this is what the court did say. The court said that the June 21 ruling in there, it said specifically was final and unappealable. So the May order recognizes that the June order is final and unappealable. In fact, it cites both Sykes and Ritson in that regard. Look at record 5525. 5525. It says, citing Sykes and Ritson, the moving party should not be given a third bite of the apple. Why? Because it was a final order. Furthermore, they said, although the Blackstone and Foundation parties are not held in contempt, that was under section 105. And the reason was, and you look at section H of that opinion, the reason was the court said, well, AWI, you didn't have the right language in your motion. Your motion's deficient. So we're not going to grant the sanction. But then it says in the very next section, section I, compare H and I, the court says, but nonetheless, I got to look at whether the automatic stay was in effect and was violated. And what the court said is the Kansas litigation, quote, was filed in violation of the automatic stay. And that's 5514. 5514. Now, the district court's error, I submit to you, Your Honor, was that it looked at the status of the parties rather than the language of the statute. 362C1, as this court knows, talks about property of the estate. And it continues until the property is no longer property of the estate. And there's no question that the Kansas mineral interests were property of the estate. The district court said, well, Foundation and Blackstone parties were not held in contempt. Therefore, no violation of the automatic stay. Therefore, they can continue. But of course. But the whole premise of your case, I mean, the whole conclusion of your case is absurd. And that is the two non-debtor parties should be continuing to litigate this in the bankruptcy court. What's the whole basis at this point for bankruptcy court jurisdiction? Your Honor, I respectfully submit that perhaps I have not been clear on my arguments. Let me say this. We're not saying that the Foundation and Blackstone need to litigate the state court suit in federal court. No, what we're saying is, if they want to litigate their state court suit, they got to file a new suit in Kansas. What they can't use is the vehicle of the Kansas suit that was filed in violation that's never been annulled. So then you'll argue statute of limitations? Yes. Of course. Absolutely, Your Honor. And that's the fallout from Ritson. The fallout from Ritson is when you have a final order that's not appealed and you can't read Cueva and Sykes and Chestnut, Your Honor, to say anything other than if you need an annulment. If you want to retroactively do something, you need an annulment. If you want to do prospective, that's great. State is terminated prospectively, but that doesn't allow you to use the vehicle of the dead lawsuit. Well, so then what was the point of the abstention discussion if the party, if your client wasn't trying to keep the case in bankruptcy court? Well, first off, Your Honor, this was not a case that was removed from district court to bankruptcy court. But the abstention, the adversary proceeding occurred. I know that. But what, but that's totally irrelevant under the, what you're saying now. Let me see if I could be clearer, Judge, if I could. Okay. If you determine, as I hope you will, that the Kansas suit cannot proceed, then the question is what happens at that point? I'm perfectly happy that you don't have abstention. But here's the other issue. If you have the Kansas suit allowed to go forward, where are we going to litigate the issue of the $50,000? There's the NPI. Remember, what NPI does, the net profit interest burdens the working interest, so it makes it less valuable, which is why this $50,000 is going to the trustee. If AWI doesn't pay, where is that going to be litigated? It's got to be litigated in bankruptcy court. That's why the permissive abstention was wrongful there. So it depends upon what you hold about . . . But, of course, if you get the Kansas case dismissed, then there's no $50,000 anyway, right? Well, they can file a new lawsuit, and we will litigate that and see what happens there, Your Honor. Right. But . . . We will see what happens. It's an interesting little situation. They're also going to argue that the last in time rule applies, and I will submit to you that that's wrong for several reasons. First off, there's no case, not a single case that they've cited post-Ritson, that says you can evade Ritson by having a later judgment. In fact, that's inconsistent with Ritson. Ritson says you want to have later judgments, say, without prejudice. But it doesn't say you get a chance to go back time and time and time again, which is why the bankruptcy court said, meh, don't get a third bite at the apple. Secondly, all, at least all, I won't say all, but almost all of the cases involving last in time involve a conflict between a state court final judgment and another state court final judgment or a federal court judgment. This is multiple judgments in the same case, which is why Ritson is squarely on point. Don't think the last in time rule applies. They also are going to talk about the confirmation order, which is what the July 23rd district court opinion was about, but all confirmation does is confirm termination. It confirms the ending of the state. It doesn't retroactively resurrect. To grant their relief would mean that you would have to overturn CUEVA, overturn Sykes, overturn Chestnut, and say, oh, no, no, no. We really didn't mean it when we said you've got to say annulment. Your Honor, there's no ambiguity in the bankruptcy code. December 31, 1990, the automatic stay took effect and continue as to all undisclosed property, which this property is. But you know, we can be pretty confident that the non-debtor parties didn't know anything about this when the suit was filed. Your Honor, that has to do with sanctions. It has nothing to do with the imposition of the stay. The stay doesn't talk about knowledge of the parties. It talks about property of the estate. And whether you know about it or not, the automatic stay is there. Yes, but they are all, as the court said earlier on, there's no question that the non-debtor refused AWI as the debtor did. So I do think this is a little bit different from the ordinary case where the debtor is the putative plaintiff. Well, Your Honor, in this case, the debtor and the foundation parties represented by the same counsel. The same counsel filed that suit. And the fact that they didn't impute knowledge is another issue. But that doesn't excuse the violation of the stay. It may excuse the fact that they're not sanctioned, but it doesn't mean that the stay was not violated and, in fact, the bankruptcy court so held. There's no ambiguity in Ritson. There's none about where finality attaches. And Judge Jones, I get your argument about the fact that courts look again and again at issues. But Ritson says you want to do that? Post-Ritson, you've got to say without prejudice in that order. Your Honor, we believe the incision below was contrary to the explicit provisions of the Bankruptcy Code, to the holdings in Ritson, and Travelers . . . I mean, has this interpretation of Ritson actually taken hold? There's no case on it. This is going to be the first one, Your Honor. Well, that's my question. I mean, because it was decided in 2020, and we're into 2024 now. And you would have thought that if this with without prejudice was so meaningful that it would be in forms, form orders, you know, arguably in colliers on forms, that sort of thing. Whether it should or should not be on forms, Your Honor, I don't think you can get around the explicit language of Ritson. That's the issue. And therefore, what I would ask that this Court order that Ritson is the law, that Cueva not proceed, that the state could be lifted prospectively but not retroactively. Thank you. All righty. Thank you, sir. We have time for rebuttal. We'll hear next from Mr. Drell. Good morning, Your Honors, and may it please the Court. The first important thing to note about the underlying state court litigation in Kansas is that my clients brought a suit to vacate an invalid default judgment partitioning oil and gas rights filed by AWI and related parties also in violation of the automatic stay. Effectively, my clients were suing AWI back, so to speak. Wait a minute. Wait a minute. Say that again, please. Effectively, my clients were suing AWI back, so to speak. In other words . . . Now, what did AWI do first? They filed a suit to partition mineral interests and failed to provide good service on the defendants. Oh, yes. Right. They then took a default judgment, which ordered the property to be sold at a sale similar to a Louisiana partition by elicitation. And so then when my clients discovered this, they filed suit to vacate that judgment as violative of due process in the Kansas Constitution. AWI, in that litigation that my clients filed, filed third-party demands against Blackstone and ENTEC, who then responded to a third-party demand. So you'll hear from Ms. Kirkpatrick in a second, but her clients didn't even initiate the suit. AWI sued them, and they responded to the suit. What's important to note is that none of the appellees affirmatively asserted a claim against the McConafee bankruptcy estate or attempted to take possession of the estate's rights. This is why the Bankruptcy Court held that none of the non-debtor plaintiffs violated the automatic stay of 11 U.S.C. section 362. What the Bankruptcy Court correctly held in denying AWI's motion to declare the Kansas litigation void ab initio, an order which was not appealed, was that the bringing of claims by non-debtor plaintiffs against AWI did not violate the stay, but the continued prosecution of the litigation could impact the estate by determining the estate's interest, and therefore the automatic stay stayed the continued prosecution of the suit, but not the bringing of the claims to begin with. Judge Hodge scrupulously protected the estate's rights and the oil and gas interests at issue, but as soon as those interests were conveyed to AWI, Judge Hodge did the right thing, declared the stay no longer in effect, and abstained from the adversary proceeding. The crux of AWI's argument is that the prior order of June 2021, denying relief from the automatic stay, is preclusive, and that's just simply incorrect. Travelers v. Bailey is in a posit because it involved a permanent injunction entered by a Bankruptcy Court in connection with a Rule 9019 settlement motion and a confirmed plan. Those were final orders. The automatic stay is, as Judge Jones pointed out just a second ago, it's flexible, and it's not permanent by its terms because it always terminates by operation of law under Section 362 of the Code. Now, my friend Mr. Rubin puts a lot of emphasis on Ritson, and Judge Jones, I think you asked the right question, has the without prejudice language taken hold? The thing is that Ritson merely held that pursuant to a statute, 28 U.S.C. Section 158, an order denying relief from the automatic stay is appealable. It doesn't mean or stand for the proposition that it's entitled to raise judicata preclusive effects and prohibits the Bankruptcy Court from later modifying it. And as we argue in our brief, I would note that the automatic stay is more akin to a And as we know, preliminary injunctions are appealable under 28 U.S.C. Section 1292, a statute. As this Court recently held, and I hate to utter this case name, but Satanic Temple, Inc. versus Texas Health and Human Services Commission found at 79 Fed Fourth 512, a preliminary injunction may be modified by the District Court even though an appeal is pending in this Court. The Bankruptcy Court had jurisdiction to later modify the stay as it did here and declare the stay no longer in effect under 11 U.S.C. Section 362J. Ritson does not address, much less override, Section 362 of the Code wherein the stay terminates by operation of law as to an asset when it's conveyed to another party as was the case here. Mr. Rubin also relies on the Cueva case, but again, that involved the status of an invalid foreclosure where the estate's interest was at issue and the stay was, in fact, violated. So that case is likewise in a posit. And then I want to talk a little bit about the Sykes case that Mr. Rubin relies on. Sykes involved a case before this Court where the Bankruptcy Court did not expressly annul the stay. The Court merely lifted the stay, but directed that the plaintiffs in that case could proceed in state court. Yes. Well, the reason is that that plaintiff's case, first of all, it was filed by someone against GLOMAR, Global Marine, which had already filed bankruptcy, but the plaintiffs didn't know it. And second, that meant it was an ordinary 362 termination. It wasn't. That's what sort of confused me, the distinction between termination and annulment. It may be — it was proper for the Court to terminate the stay under 362, so that the ongoing litigation could go on. Yes, but the action was filed in violation of the stay, and the Court basically said that even though the Bankruptcy Court didn't utter the magic words annulment, they said that — Same thing. They said it was annulled. In fact, and there's another case out there that I found, it's Chun v. Chun, 106F3-1239, at page 1242, footnote 6 — this is a 1997 Fifth Circuit case — where the footnote says, The Court further explained that when a Bankruptcy Court lifts the automatic stay, any defect in the previous action was cured. And so that's how this Court has interpreted Sykes. And frankly, Your Honor, Global Marine is basically trying to do the same — I mean, sorry, AWI is trying to do the same thing that Global Marine did in that case. It attempted to have the underlying state court litigation dismissed, claiming it was void ab initio. This Court rejected that argument in Sykes, and it should do so here. And the other point that the panel just raised with Mr. Rubin that I don't think he really answered in any satisfactory manner is, what does this case look like on remand? Suppose the Court reverses and remands the case back to Bankruptcy Court. You have a bankruptcy adversary proceeding where none of the parties are a debtor, a creditor, or the estate. It's completely non-parties to the bankruptcy. This would be a decidedly non-court proceeding for purposes of 28 U.S.C. 157b2, and therefore the Bankruptcy Court could only issue a report and recommendation to the District Court and couldn't issue a final judgment in the case. But lastly, if you look at the record, all the non-debtor parties have asked for a jury trial. So that means this is going to clog the United States District Court for the Western District of Louisiana's docket, which would be sitting in bankruptcy over a case that, again, does not involve a debtor, a creditor, or the estate. This Court would have to apply Kansas law, both procedural and oil and gas law, over assets that are all in Kansas, and this case would be decided in Shreveport, Louisiana. It's a nonsensical result, and this Court shouldn't order it. Am I correct that the McConathys are, for all practical purposes, out of the case? Yes. Because they settled? Yes. Okay. The McConathys are, and John Lester, the trustee, is out. Right. Both the Bankruptcy Court and the District Court rulings are correct, and as stated in our brief, this Court is without jurisdiction to review the abstention decision. I welcome the Court's questions. Judge Clement? Judge Jones? Judge Wilson? No. I don't think so. Thank you, Your Honor. I cede the balance of my time. All right. Your Honor, the Blackstone Parties want to adopt the arguments of the Foundation Parties as we are similarly situated, but I did want to point out a couple of things. One, it's correct that the Blackstone Parties were not parties to the lawsuit in Kansas until AWI filed their third-party demand against the Blackstone Parties, and in that third-party demand, AWI is asserting its own adverse possession and its own claims against the Blackstone Parties. And so in responding to that third-party demand, the Blackstone Parties were asserting their claims against AWI, not the debtor, and AWI wasn't asserting claims of the debtor against the Blackstone Parties. And so this idea that there's one mineral interest that was at issue in the Kansas litigation and it all belonged to the debtor is sort of a misdirection. These are all undivided mineral interest holders that each hold their own interest. And we were not represented by the same counsel in the Kansas litigation, I would also say. You're saying Foundation and Blackstone were not? Correct. Blackstone had its own counsel. Different counsel. Correct. I will also say that— And AWI is the operator, right? Correct. And the claims that AWI made were that since it had become operator, it had adversely possessed the Blackstone Party's MPI. Their what MPI? Net profit interest. It's one of the interests that's at issue in the Kansas litigation. Was Blackstone a co-operator or was it a royalty owner? No, Judge. It just had an interest that sat on top of the other interests. Well, in Texas, we call it a royalty interest. Were they a lessor or a lessee? No, it would be more akin to a royalty interest. Okay. Maybe even an override. So what's AWI going to get? I mean, they're the operator, for Pete's sake. I mean, so somebody owns the mineral interests, which they're producing. Correct. They had some working interest in them as well. And I believe in the 2015 Kansas case that was filed, that was when AWI took over all the interests. Well, I guess my point is if you knock out all the royalty holders, the McConafees claim to be royalty holders, right? Correct. They had seized the debtor's interest. AWI had seized the debtor's interest by virtue of the partition action that it filed in 2015. Without service. Correct. Okay. That's pretty cool. It is very neat. It's like squatting. Here's AWI filed suit against Blackstone Parties, and when Blackstone Parties responded, they said, oh, you're supposed to be in bankruptcy court, brought us to bankruptcy court, and now won't let us back out. I read all this, and it's just now becoming more graphic to me. Yes. We are not a creditor or a debtor of the estate. All of the cases that they cite deal with creditors and debtors. Ritson recognized in Note 4 that a change in the calculus could result in a change in the stay motion or the right to a stay. In Ritson, an adversary proceeding had been determined before the party came back to appeal the stay order, and they didn't account for that clearly for good reason. And we're not in the same situation here. AWI changed the facts when they settled the claim with the estate. And that's all. My time has expired. Okay. Thank you very much. Thank you, Your Honor. Okay, Ms. Rubin. I want to address the arguments in reverse order. Learned Counsel for Foundation Parties confuses termination and annulment. Termination, as this Court said in Cueva and Sykes, is prospective. It's not retroactive. If you want to have a retroactive change on something that violated the automatic stay, you have to have annulment. There has been no order of annulment here. Yeah, but, I mean, isn't it correct that, factually speaking, there's no difference between what happened in Sykes and what the Court did here? No, I disagree with that, Your Honor. First off, Sykes could not have occurred today. And here's the reason. In Sykes, there were two orders. And the first order, the Court said, this circuit concluded, that the bankruptcy court's original order was intended to validate the filing of the original complaint. That's what it said. And that's at Sykes 881, Fed 2nd, 176. Then there's a second order, right, which is global, comes back in. The second order couldn't have occurred today. And the reason is Ritson. That first order was not without prejudice. And, therefore, you would never have had the second order in Sykes. Don't think it occurs today. Yes, I see that, Judge Jones, that my reference to Ritson is . . . Questionable. . . . believed to be pushing it.  But I think if you read the squarely, the language of Ritson, there's no way around it. Whether the Court likes the fact that Ritson changed what happened in bankruptcy court before, I don't think there's any other way to read Ritson. Because the only exception is the without prejudice issue. They also talk about knowledge of the stay. And let me talk about that. And you asked me some questions about that. And we went back and pulled Cueva. So this is the Cueva case. And this is the quote in Cueva. When a bankruptcy case is filed, 362 automatically imposes a statutory stay against any act to enforce a lien against the property. And then it says, such actions are invalid whether or not the creditor acts with knowledge of the stay. They're invalid whether they act with knowledge of the stay. And that's . . . then it cites Calder, which is a Tenth Circuit case, and it cites Jones, which is this Court's case. Knowledge of the stay is irrelevant to the impact of the stay and its imposition. Concerning learning counsel for the Blackstone parties, what they're saying in essence is, gee, AWI, we agree that there's a violation of the stay. You violated it first by filing the partition suit. In other words, they're conceding that an action to deal with property is a violation of the stay. By the way, Blackstone now owns all the NPI. Foundation assigned their rights, and that's in the record of that, too. And that's why they said, we are aligned now because we're not adverse. But they did have joint counsel when they filed the motion that resulted in the June order. They did file the motion to modify together. Take it back. They filed that motion together. And so, therefore, they knew when they asked for that motion to modify, and there's learned counsel on the other side who knows bankruptcy law. They knew that a motion to modify would be triggered by Ritson because it's squarely on point. Your Honor, the final question was, what would a reversal get? Reversal doesn't get remand to the bankruptcy court. Reversal here is, the reversal is the decision that allows the Kansas case to go forward. You're not reversing the termination order. You can terminate the stay. But what you can't do is resurrect the Kansas suit. So what happened is the district court erred in allowing the Kansas suit to continue. And that's what has to be reversed, and you can reverse and render. Thank you. Okay. Thank you. All righty. Let me get my paper. Court will stand in recess until 9 a.m. tomorrow morning.